FILED
FEB 1 5 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CHRISTOPHER CAIN, ) | |
| Petitioner, ) | |
| v. ) | Case No.: 2:11-cv-656 |
| HENRY PONTON, Warden, ) | |
| Respondent. ) | |

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's, Christopher Cain's ("Cain"), Petition for a Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2254. ECF Nos. 1, 5. The Petition was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. For the following reasons, the Court RECOMMENDS the Commonwealth of Virginia's ("Commonwealth") Motion to Dismiss, ECF No. 9, be GRANTED and Cain's Petition be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Cain was convicted by a jury in the Circuit Court of the City of Newport News, Virginia, of first-degree murder and using a firearm during the commission of a felony and was sentenced on August 22, 2008, to forty-five years in prison. He appealed to the Court of Appeals of Virginia, but a judge and a three-judge panel denied the appeal on May 27 and August 4, 2009, respectively. Cain then appealed to the Supreme Court of Virginia, which refused the appeal and his request for a rehearing on January 28 and March 4, 2010, respectively. He filed a *habeas*

petition in the Newport News Circuit Court on June 3, 2010, alleging ineffective assistance of counsel, but the Court dismissed the petition on November 29, 2010, "holding the trial error claims were not cognizable under *Henry v. Warden*, 576 S.E.2d 495 (Va. 2003), and the ineffective assistance claims failed under *Strickland v. Washington*, 466 U.S. 668 (1984)." ECF No. 11, ¶ 3 (citation omitted). Although Cain noted an appeal to the Supreme Court of Virginia, the appeal was dismissed on April 6, 2011, as untimely under Rule 5:17(a)(1) of the Supreme Court of Virginia. He then filed a *habeas* petition in the Supreme Court of Virginia, which dismissed the petition on June 23, 2011, as untimely, VA. CODE ANN. 8.01-654(A)(2), and successive, *id.* 8.01-654(B)(2).

While in the custody of the Nottoway Correctional Center, Cain filed the instant § 2254 Petition, alleging the following:

1. The Virginia judiciary erred in failing to find that the Petitioner's rights were violated when the trial court failed to order a mistrial after the prosecution elicited testimony about a request for counsel.
2. The Virginia Judiciary erred in failing to find that the Petitioner's rights were violated when the prosecution failed to turn over exculpatory evidence prior to trial.

ECF No. 2, attach. 2 at 7, 8. The Commonwealth, on behalf of the Respondent, filed a Rule 5 Answer, Motion to Dismiss, and brief in support on August 13, 2012. Cain, by counsel, filed a brief in opposition to the Motion on August 29, 2012.[1] Although the Commonwealth has not filed a reply brief, the time to do so has lapsed. The Commonwealth's Motion to Dismiss is, therefore, ripe for decision.

## II. ANALYSIS

### A. Exhaustion

---

[1] A *Roseboro* notice was not filed because Cain is represented by counsel.

Before a state prisoner can file a § 2254 petition in federal court, he must first have exhausted his available state court remedies. 28 U.S.C. § 2254(b)-(c). In order to comply with the exhaustion requirement, a state prisoner must present "the same operative facts and the controlling legal principles" raised in the § 2254 petition to the Supreme Court of Virginia on direct appeal or in a state *habeas* petition, *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (quotation marks and citations omitted), in order to give the Supreme Court "a full and fair opportunity to review state court proceedings," *Whittlesey v. Circuit Court for Baltimore County, Md.*, 897 F.2d 143, 145 (4th Cir. 1990). The burden of proving whether a claim has been exhausted lies with the state prisoner. *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994) (citations omitted). In this case, both parties maintain Cain has exhausted his available state court remedies. The Court agrees. In an unpublished *per curiam* opinion denying Cain's appeal, the Court of Appeals of Virginia set forth his claims as follows:

> I. Appellant contends the trial court erred in denying his motion for a mistrial based upon an improper reference at trial that appellant invoked his right to an attorney.
> II. Appellant also contends the trial court erred in refusing to grant a mistrial based upon the Commonwealth's late disclosure during trial of a witness' statement to police.

ECF No. 11, attach. 1 at 1, 3. These claims are the same ones the Supreme Court of Virginia reviewed on appeal from the Court of Appeals and ultimately refused, and these claims are the same ones Cain raises in his § 2254 Petition. Because the Supreme Court refused Cain's appeal containing the above claims after being given a full and fair opportunity to review them, the Court FINDS Cain has exhausted his available state court remedies.

### B. Statute of Limitations

*Habeas* petitions filed under § 2254 are subject to a one-year statute of limitations. 28

U.S.C. § 2244(d)(1). Generally, this period begins to run from "the date on which the judgment became final by the conclusion of direct review." *Id.* § 2244(d)(1)(A). This period is tolled, however, during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. *Id.* § 2244(d)(2).

The Supreme Court of Virginia refused Cain's request for a rehearing of his direct appeal on March 4, 2010, and his convictions and sentences became final on this date under § 2244(d)(1)(A). Contrary to the Commonwealth's statement, the limitations period began to run on June 3, 2010, the day after the ninety days he had to file a petition for a writ of *certiorari* to the Supreme Court of the United States expired. *See* SUP. CT. R. 13(1); *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("If no petition for a writ of *certiorari* is filed in the United States Supreme Court, then the limitation period begins running when the time for doing so—90 days—has elapsed."). Also contrary to the Commonwealth's statement, Cain's opportunity to file a timely § 2254 petition should have expired one year later on June 3, 2011. However, in calculating the limitations period, the Court excludes the time in which a properly filed state collateral proceeding is pending, *see* 28 U.S.C. § 2244(d)(2), such that the period between June 3, 2010, when Cain filed a *habeas* petition in the Newport News Circuit Court, and November 29, 2010, when the petition was dismissed, tolled the limitations period under § 2244(d)(1)(A), *see id.* Accordingly, Cain's opportunity to file a timely § 2254 petition expired on November 30, 2011, and, as will be discussed, the Court FINDS his § 2254 Petition was timely filed on November 24, 2011, six days before the one-year statute of limitations ended.[2]

---

[2] The Court need not address the unresolved question of whether "the period between the trial court's dismissal of state *habeas* claims and the time noting an appeal to the Supreme Court of Virginia" tolls the one-year statute of limitations. *Manzella v. Clarke*, No. 2:11CV575, 2012 WL 3265095, at *2 (E.D. Va. May 22, 2012) (citation omitted), *dismissed*, 488 F. App'x 752 (4th Cir. 2012) (unpublished *per curiam* opinion). *Compare Christian v.*

4

Although Cain prepared and signed his § 2254 Petition on November 24, 2011, the Petition appears to have been mailed on a later date.[3] Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts, however, adopts the prison mailbox rule for filing § 2254 petitions, which this Court recognizes. In this case, the evidence supports a finding that Cain executed the Petition on November 24, 2011, and delivered it to prison officials for mailing on that date. The Court disagrees with the Commonwealth's assessment that Cain's Petition should be deemed filed on March 12, 2012, when "it was [] properly signed by counsel and the required filing fee was [] paid," because "[o]nly a *pro se* petitioner may utilize the 'mailbox' rule." ECF No. 11, ¶ 10 (citation omitted). There is a dispute as to whether counsel was retained by November 24, 2011, when Cain prepared and signed the Petition. *See* ECF No. 1 at 5 (although a signature block appears for Cain's counsel, it is unsigned), ECF No. 2 at 5, attach. 2 at 16 (same). Absent evidence by the Commonwealth to the contrary, Cain was not represented by counsel on the date he delivered the Petition to prison officials, and, therefore, he was entitled to the benefit of the prison mailbox rule. Because a § 2254 petition is "considered timely filed if it is deposited in the prison mailing system prior to the running of the statute of limitations, *even if it does not comply with Rule 2 of the Rules Governing Section 2254 Cases or*

---

*Baskerville*, 232 F. Supp. 2d 605, 606 n.1 (E.D. Va. 2001) ("Petitioner may not have the benefit of tolling under § 2242(d)(2) during the time in which he could have filed an appeal to the Circuit Court of the County of Hannover's [sic] dismissal of his state *habeas* petition."), *with Breeden v. Commonwealth of Va.*, No. 7:05CV00413, 2005 WL 2777281, at *1 (W.D. Va. Oct. 24, 2005) ("Although the Circuit Court dismissed Breeden's state petition on December 18, 2004, the one-year period remained tolled until January 18, 2005, the date on which the time to appeal the dismissal of the petition expired.") (footnote and citation omitted). Even if the statute of limitations was not tolled for this period or for the period between April 18, 2011, when Cain filed a *habeas* petition in the Supreme Court of Virginia, and June 23, 2011, when the petition was dismissed as untimely, his § 2254 Petition was, nonetheless, timely filed on November 24, 2011, six days before the one-year statute of limitations ended.

[3] The envelope in which the Petition was mailed shows that it was postmarked on a Thursday, but the Court cannot discern the rest of the date. The Petition could not have been mailed on Thursday, November 24, 2011, which was Thanksgiving, nor could it have been mailed on Thursday, December 8, 2011, because the Clerk's Office date-stamped and filed it on December 8, 2011. The likely scenario is that Cain delivered the Petition to prison officials on Thursday, November 24, 2011, and that they did not mail it until Thursday, December 1, 2011.

*it lacks the requisite filing fee,*" *Smith v. Virginia*, 3:11CV06, 2012 WL 618973, at *2 (E.D. Va. Feb. 24, 2012) (citations omitted) (emphasis added), the Court FINDS Cain filed his § 2254 Petition on November 24, 2011, which is within the one-year statute of limitations.

### C. Merits

Once a petitioner's state remedies have been exhausted, a federal court may not grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts."[4] 28 U.S.C. § 2254(d)(1)-(2). A state court's decision is contrary to clearly established federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. *Id.* at 413. Factual determinations made by a state court are "presumed to be correct," and a *habeas* petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Hill v. Ozmint*, 339 F.3d 187, 194 (4th Cir. 2003).

Cain first claims the state trial court erred when it failed to declare a mistrial after an improper reference at trial to the invocation of his *Miranda* rights, specifically the right to an

---

[4] The Supreme Court of Virginia is not required to set forth findings of fact and conclusions of law when disposing of a claim for that claim to be "adjudicated on the merits." *Wright v. Angelone*, 151 F.3d 151, 156-57 (4th Cir. 1998); *see also Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). Cain's appeal to the Supreme Court was refused. However, the Court of Appeals of Virginia addressed the merits of Cain's claims when it denied his appeal. Therefore, the Court of Appeals issued the last reasoned decision on the merits, and this Court may address the merits of Cain's claims.

attorney, during his interview with police. At trial, in response to the question, "Once you confronted him with additional inconsistencies, was that the end of the interview?," a detective testified, "Yes, he asked for a lawyer." ECF No. 11, attach. 1 at 1. Cain objected, and the trial court sustained the objection and instructed the jury to disregard the response. *Id.* He then moved for a mistrial, which the trial court denied, finding "the single reference was not responsive to the question, and the [prosecution] did not intentionally seek the response." *Id.*, attach. 1 at 2. Although Cain was asked if he wanted the Court to give the jury a curative instruction on this issue, he decided the instruction should be given at the conclusion of the trial. On appeal, the Court of Appeals of Virginia, applying *Doyle v. Ohio*, 426 U.S. 610 (1976), held there was no reversible error because "an officer's mere mention that a defendant had once invoked his right to counsel, standing alone, does not compromise a defendant's right to due process." *Id.* (citing *Pulley v. Commonwealth*, 525 S.E.2d 51, 53-54 (Va. Ct. App. 2000) (holding that *Doyle* does not impose *prima facie* bar against any mention that defendant invoked his right to counsel but instead guards against exploitation by government of that constitutional right)).

In *Noland v. French*, 134 F.3d 208 (4th Cir. 1998), the Fourth Circuit "held that mere mention of a defendant's exercise of *Miranda* rights is not *per se* prohibited; rather, a [] violation [under *Wainwright v. Greenfield*, 474 U.S. 284 (1986),] depends on the particular use to which the post-arrest silence is being put." *Noland*, 134 F.3d at 216 (citations and internal quotation marks omitted). *Greenfield* "does not impose a *prima facie* bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor." *Id.* (citation and internal quotation marks omitted).

7

Contrary to Cain's claim that "[t]he trial court violated [his] constitutional right to a fair trial in failing to order a mistrial based on the statement about [his] request for counsel," ECF No. 15 at 3, the prosecution did not exploit his invocation of *Miranda*. In fact, Cain points to nothing in the record to support a claim that his invocation of *Miranda* was anything but merely a fleeting utterance made inadvertently and gratuitously by a detective in response to the prosecution's question.[5] Any error that might have arisen from this fleeting utterance was minimized by the curative instruction the trial court gave to the jury at the time Cain objected and at the close of trial. Accordingly, there is no unreasonable determination of fact or any unreasonable application of federal law in the Court of Appeals of Virginia's analysis on this issue.

Cain also claims the trial court erred when it failed to declare a mistrial due to the Commonwealth's late disclosure during trial of a witness's statement to police. Specifically, a witness, who had lived with the victim on the date of the murder, made a statement to police a few hours after the murder was committed in which he apparently stated that Cain and a man with a light complexion and a .25 caliber handgun were present that night. ECF No. 11, attach. 1 at 4. This statement, which was not disclosed to Cain until the second day of trial after the witness had testified and had been recalled, is inconsistent with the witness's earlier testimony that a man with a dark complexion was armed and present with Cain.[6] *Id.* Although Cain moved for a mistrial, which the trial court denied, the court also gave him the option of recalling the witness for cross-examination during his or the prosecution's case. *Id.* He recalled the witness later on the second day of trial during the prosecution's case. *Id.*, attach. 1 at 5. Again, the

---

[5] The detective's statement, "he asked for a lawyer," was non-responsive to the prosecution's question, and by posing the question, the prosecution did not directly or indirectly ask whether Cain had invoked his *Miranda* rights during the interview.

[6] The prosecution conceded the inconsistency between the witness's statement to police and his trial testimony. ECF No. 11, attach. at 4.

8

witness testified that a man with a dark complexion was present with Cain and armed the night of the murder, thereby contradicting his statement to police that the man had a light complexion. *Id.* Upon further questioning, the witness was not able to recall what he had said to police, so the Court permitted Cain to read a typed statement and play an audio statement into the record. *Id.* Although the witness disagreed with the accuracy of the typed statement, "[h]e conceded the statement attributed to him referenced that a light-skinned man had a .25 Raven" despite "testif[ying] that he described a dark-skinned individual." ECF No. 11, attach. 1 at 6. The witness, however, denied seeing or informing the police about an armed man, other than Cain, with a light complexion. *Id.*

On appeal, Cain acknowledged he was able to cross-examine the witness on his prior inconsistent statement but, nonetheless, argued he was prejudiced "'because the statement had effective impeachment value for at least one witness who had yet to testify, Nolan Richard.' According to [Cain], he could have asked Richard 'prior to trial if he bore the tribal tattoo [the witness] alleged which would have definitely identified Richard as possessing the gun.'" ECF No. 11, attach. 1 at 7. On appeal, the Court of Appeals of Virginia, applying *Brady v. Maryland*, 373 U.S. 83 (1963), held there was no reversible error because:

> [Cain] had an opportunity to use the [witness's] statement during Richard's testimony and inquire about the tattoo. Moreover, [he] never requested a continuance or any other form of relief to review the statement more fully and better prepare for further examinations. Instead, his only request for relief was that a mistrial be declared.
> ....
> [Cain] had an opportunity to confront [the witness] with his statement in an attempt to impeach him. When so confronted, [the witness] denied the statement's accuracy and reiterated that he only saw one light-skinned man with a gun, and that man was [Cain]. Therefore, the fact finder was aware of the statement and was free to weigh it with all the other evidence presented. Moreover, ... two of the five men who entered [the witness's] apartment,

9

> corroborated [the witness's] testimony regarding [Cain's] actions in the apartment and ... [in] the woods. Additionally, [two other witnesses] testified that [Cain] remained alone in the woods with [the victim] after telling the other four men in his group to leave, and shortly thereafter they heard gunshots. Under the circumstances, it is not reasonably probable that the jury's verdict would have been different had the statement been disclosed earlier. Accordingly, it was not material.

*Id.* The Court concurs with this analysis.

It is well settled that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal' had it been 'disclosed and used effectively.'" *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). However, "there is never a real *Brady* violation unless the non-disclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). *Brady*, therefore, involves a three-part inquiry: (1) is the evidence at issue favorable to the accused?; (2) was the evidence willfully or inadvertently suppressed by the prosecution?; and (3) was the accused prejudiced as a result? *See id.*

As the Commonwealth concedes, the evidence at issue—the witness's statement to police—is clearly favorable to Cain because it had impeachment value. ECF No. 11, ¶ 16 ("[The witness's] statement to the police was not *per se* exculpatory, but was pertinent impeachment evidence once he testified inconsistently with the statement."). The prosecution inadvertently failed to disclose this evidence until the second day of trial after the witness had testified and had

been recalled.[7]  Accordingly, the first and second prongs of *Strickler* are satisfied.  Cain, however, cannot satisfy the third prong of *Strickler*.

Unarguably, if the witness's statement to police was disclosed to Cain prior to the witness being recalled, it would have been useful to impeach him when he first testified.  This evidence could also have been referenced during Cain's opening statement.  The trial court, however, minimized any prejudice to Cain that might have been caused by the prosecution's late disclosure of the witness's statement.  For example, Cain was allowed to recall the witness for cross-examination during the prosecution's case, and he was allowed to read a typed statement and play an audio statement into the record in the jury's presence.  The jury, therefore, was aware of the statement and was free to weigh it with all the other evidence presented.  Even if the jury discounted or completely disregarded the witness's testimony, two other witnesses testified as to Cain's actions in the apartment and in the woods, including that they heard gunshots after Cain requested they leave him alone with the victim.  Moreover, any concern that the late disclosure prejudiced Cain's opportunity to ask Nolan Richard, "prior to trial if he bore the trial tattoo [the witness] alleged which would have definitely identified Richard as possessing the gun" was minimized by the fact that Cain received the late disclosure *before* Richard testified.  Therefore, had Cain believed the late disclosure was substantially problematic, he could have moved for a continuance or additional time to carefully review the witness's statement and adequately prepare for future witness examinations, including Richard's.  He did not do so.  Absent additional support by Cain, the prosecution's late disclosure of a witness's statement to police did not violate *Brady* because it was not so serious as to create a reasonable probability that had the statement been disclosed earlier it would have produced a different verdict.

---

[7] There is no evidence that the prosecution's conduct was willful.

11

Accordingly, there is no unreasonable determination of fact or any unreasonable application of federal law in the Court of Appeals of Virginia's analysis on this issue.

## III. RECOMMENDATION

For the preceding reasons, the Court RECOMMENDS the Commonwealth's Motion to Dismiss, ECF No. 9, be GRANTED and Cain's Petition for a Writ of *Habeas Corpus*, ECF Nos. 1, 5, be DENIED.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Cain is notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to forward a copy of this Report and Recommendation to all

counsel of record.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 14, 2013

# CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

John Obiora Iweanoge
The Iweanoges Firm PC
1026 Monroe Street, NE
Washington, DC 20017-1760
Counsel for the Petitioner

Kathleen Beatty Martin
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for the Respondent

Fernando Galindo
Clerk of the Court

By:
Deputy Clerk
February 19, 2013